UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:10-CV-00512-GKS-KRS

RUSSELL NOONAN and
DENISE NOONAN, his wife,

Plaintiffs,

vs.

VERMONT MUTUAL
INSURANCE COMPANY,

Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' NOTICE OF PROPOSAL FOR SETTLEMENT AND PROPOSAL (DOC. 25)**

Plaintiffs Russell Noonan and Denise Noonan, his wife, respectfully submit the following memorandum of law in response to defendant, Vermont Mutual Insurance Company's Motion to Strike Plaintiffs' Notice of Filing Proposal for Settlement and Proposal (Doc. 25). For the reasons set forth below and under Florida law, Defendant's motion should be denied.

**I. PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

1. This insurance bad faith action arises out of an October 17, 2005, automobile collision in which Ronald Robbins made a left hand turn directly into the path of an oncoming motorcycle driven by Russell Noonan, violating Mr. Noonan's right of way.

2. At the time of the loss, Mr. Robbins carried automobile liability coverage with Defendant, Vermont Mutual. The Vermont Mutual insurance policy was in full force and effect at

the time of the loss and Vermont Mutual did not have any coverage defenses whatsoever.

3. As a result of the negligence of Vermont Mutual's insured, Mr. Noonan suffered catastrophic injuries and damages.

4. As a result of Vermont Mutual's failure to settle Mr. Noonan's claim when it could and should have done so, Mr. Noonan sued Mr. Robbins in the Eighteenth Judicial Circuit, in and for Brevard County, Florida.

5. Rather than litigating the matter to verdict, the respective parties entered into a Consent Judgment (which the Defendant refers to as a "Cunningham" Agreement).

6. Pursuant to the terms of the Consent Judgment, a Final Judgment has been entered against Ronald Robbins, and in favor of Plaintiffs in the amount of $1,450,000.00.

7. This Final Judgment constitutes the damages entered against Mr. Robbins, and pursuant to the Consent Judgment will be satisfied by Defendant, Vermont Mutual (including statutory interest), if the Plaintiffs, as third party beneficiaries under the Vermont Mutual insurance contract, are successful in this insurance bad faith case.

8. When Plaintiffs filed their bad faith complaint, due to an oversight, Plaintiffs included the language that it was entitled to fees pursuant to Florida Statute 627.428. In almost all of the insurance bad faith cases handled by the law firm of Plaintiffs' counsel, Florida Statute 627.428 is applicable because the action is brought by either the insured or through an assignment by the insured. As such is not the case here, the inclusion of this language was simply an inadvertent oversight by Plaintiffs' counsel.

9. As it is Plaintiffs' position that Florida Law governs this insurance bad faith action (see Choice of Law section below), and that the Florida offer-of-judgment statute is substantive

pursuant to *Erie* (also see below), on July 26, 2010, Plaintiffs' filed their Notice of Serving Proposal for Settlement and served the Proposal on the Defendant.

10. On August 4, 2010, Defendant filed its Motion to Strike Plaintiffs' Proposal (Doc. 25), alleging that a proposal for settlement pursuant to Florida Statute 768.79 is inappropriate in this type of action because "this is not an action for 'damages' in the context of the rules/statutes regarding proposals for settlement" (Doc. 25 at 3).

11. Defendant does not argue that Florida Statute 768.79 is inapplicable because Florida law does not apply, but rather, because Defendant believes Florida Statute 768.79 "applies only to civil actions for damages" (Doc. 25 at 3).

## II. ARGUMENT

### A. Choice of Law

In footnote 2 of Defendant's motion, as well as in Defendant's pending Motion for Summary Judgment, Defendant "contends that Vermont law governs the Noonans' claims." Plaintiffs respectfully disagree, and based on the below legal authority, submit that Florida law applies to this insurance bad faith matter.

As this case is being litigated in Florida, Florida law will determine whether Florida law or Vermont law will apply to this bad faith action. Florida law provides that the substantive law of an insurance bad faith action is determined by the state where performance under the insurance contract was actually to be "performed" *Teachers Insurance Co. v. Berry*, 901 F. Supp. 322 (N.D. Fla. 1995).

The reasoning and result in *Berry* is consistent with that approved by the Supreme

Court of Florida in *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13 (Fla. 1976), which also addressed a bad faith claim. At issue was an automobile insurance contract entered into in Mississippi, but the Court affirmed the applicability of Florida law to the bad faith action because "the obligation of the contract breached by [the carrier] was the obligation to provide [the insured] with a good faith defense to the action. ... the place of performance was Florida, where the cause of action against the [insured] was maintained and was defended by [the carrier.]" *Id.* at 14 – 15.

In fact, citing to *Grounds*, in *Adams v. Fidelity and Cas. Co.*, 757 F.Supp 1348, (S.D. Fla. 1990), the court noted, "While North Carolina law applies to questions regarding the substantive provisions of the insurance contract and the construction thereof, *Brannan*, 500 So.2d 236, Florida law applies to questions regarding Defendant's performance under the contract and the remedies available for non-performance." *Adams* at 1351.

Recently, the Court in *Shin Crest PTE, Ltd. v. AIU Ins. Co.*, 2008 WL 728388 (M.D. Fla. 2009) reached the same result regarding an insurance policy under which the parties agreed that Taiwanese law governed breach of contract and declaratory judgment claims on the contract, but that the bad faith claim was governed by Florida law. Relying on *Grounds*, *supra,* the Court concluded that "matters concerning performance are governed by the law of the place of performance." *Id.* at *2. Florida was the place of performance "because that is where the lawsuits against [the insureds] were maintained and defended by [the carrier.]" *Id.*

The case of *Virginia Farm Bureau Mutual Ins. Co. v. Dunford*, 877 So. 2d 22 (Fla. 4th DCA 2004), (handled by this firm) is also instructive. *Dunford* involved an automobile accident that occurred in Florida, but with a tortfeasor who resided in Virginia and was insured under a liability policy issued in Virginia. The court did not address whether Virginia or Florida

bad faith law would apply to the contractual duties, but did make findings regarding where the insurance contract was performed for purposes of Florida's long arm jurisdiction. Interpreting Florida Statutes section 48.193(1)(g), which provides for jurisdiction where a defendant is alleged to have breached a contract by failing to perform acts in Florida that were required under the contract to have been performed in Florida, the court held that defending the insured in a Florida court was "a contractual obligation to be performed in Florida." *Id.* at 23 - 24. Similarly, the court found that the minimum contacts necessary to support jurisdiction because the insurer conducted its duty to defend the insured in a Florida court.

Notably, the court focused on the "activity of the insurer" and distinguished two cases relied upon by the carrier because neither case "involved excess judgments resulting from bad faith occurring in the state in which the suit against the insured was filed." *Id.* at fn. 1. In this regard, the Court suggested again in its conclusion that the insurer's breach of any duty under the contract occurred in the state where a judgment was obtained against the insured, not necessarily the state where the claimant resided: "[The carrier] should have foreseen that a breach of that duty in Florida, resulting in a Florida judgment, would subject it to being hailed into a Florida court." *Id.* at 25.

Regarding Vermont Mutual's contractual duty to pay insurance proceeds to settle the Noonan claim, there is no dispute that said proceeds were required to have been delivered to the claimant attorney's Florida office. Florida law provides that, in the absence of a location for payment that is specified in a contract, the "performance" of making a contractually required payment occurs at the location which the creditor designates for payment. *Carter v. Fleming*, 567 So. 2d 535 (Fla. 1st DCA 1990).

In fact, Defendant, in its Motion for Summary Judgment (Doc. 24), is absolutely correct as to how Florida handles choice of law in the first paragraph of its "CHOICE OF LAW" section, when it wrote:

> "Florida courts have recognized that while the rights and risks of parties in matters of insurance "coverage" are determined under the *lexi loci contractus* [SP] doctrine, a "bad faith" case raises questions of "performance" under the insurance contract. *Lumbermans Mut. Cas. Co. v August* , 530 So.2d 293, 295-96 (Fla. 1988); *Clifford v. Commerce Ins. Co*., 2009 WL 3387737 (S.D. Fla.). Matters concerning performance of a contract are determined by the law of the place of performance. *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13. 15 (Fla. 1976). To determine the place of "performance," courts have considered (1) whether the tort action was brought in Florida, (2) whether the insurer defended the action in Florida, and (3) whether the insurer engaged in settlement negotiations in Florida, regardless of where the insurance contract was "executed." *Clifford*, 2009 WL 3387737 at 1." (Doc. 24 at 11).

Florida Law is applicable to this insurance bad faith claim for a number of reasons. First, there is no dispute that the tort action was brought in Florida. Second, there can be no dispute that the insurer defended the action in Florida. Just because the company is based in Vermont and the insured was a resident of New Hampshire has no bearing on where the tort action was defended. Vermont Mutual retained the Florida law firm of Cameron Hodges Coleman LaPointe & Wright, P.A. to defend the Florida tort action in Florida. Third, as to settlement negotiations, once the money was finally offered to Mr. Noonan, it was offered to him through his Florida retained attorney by the Florida defense firm retained by Vermont Mutual.

Under the foregoing authorities, the services that Vermont Mutual was to perform or did "perform" under the insurance contract included: (1) investigating and negotiating the Florida claim; (2) paying the claim, which it was to "perform" by delivering insurance proceeds

to the office of claimants' counsel in Florida; (3) providing a legal defense from the claims against its insured, which it was to "perform" in a Florida Court; and (4) hiring Florida adjusting company, Crawford & Co., to attend the underlying mediation in its place. There was no service to be "performed" in Vermont. Simply because Vermont Mutual chose to allegedly "handle" and "investigate" this Florida claim from its Vermont office does not render Vermont bad faith law applicable. Performance under the contract was due in Florida and accordingly, Florida's substantive bad faith law applies to this action.

Specifically, as it relates to the subject Proposal for Settlement, this action is in Federal Court based on diversity of citizenship, with Florida as the forum state. As such, pursuant to *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), if Florida Statute 768.79 is deemed substantive, then state law will apply. Other Florida courts have addressed this topic and determined that Florida Statute 768.79 is substantive for *Erie* purposes. *All Underwriters v. Weisberg*, 222 F.3d 1309 (11th Cir. 2000); *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001); *MRO Communications, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276 (9th Cir. 1999). As such, the substantive law of Florida applies.

In addition, in footnote 2 of Vermont Mutual's Motion, Defendant concedes that it is aware of a Florida case finding that Florida's offer of judgment statute applies to all civil actions for damages brought in Florida, even where the substantive law of another jurisdiction applied. *Bennett v. Morales*, 845 So.2d 1002 (Fla. 5th DCA 2003). In addition to *Bennett*, *BDO Seidman, LLC. v. British Car Auctions, Inc.*, 802 So.2d 366 (Fla. 4th DCA 2001), provides that Florida Statute 768.79 applies "to any civil action for damages ***filed in the courts of this state***" (Emphasis added). *Id.* at 368. The *BDO Seidman* Court concluded that "because the statute is

clear, it should be applied without engaging in a conflict of laws analysis. *Id.*

### B. THE FLORIDA OFFER OF JUDGMENT STATUTE DOES APPLY

Defendant incorrectly argues that Florida Statute 768.79 (offer of judgment statute) applies only to "civil actions for damages" and that "this is not an action for damages in the context of the rules/statutes regarding proposals for settlement" (Doc. 25 at 3).

The purpose of Florida Statute 768.79 is to encourage the early settlement of lawsuits. *Jones v. United Space Alliance, LLC*, 494 F.3d 1306 (11th Cir. 2007); *Tiara Condominium Ass'n, Inc. v. Marsh USA, Inc.*, 2010 WL 1049322 (S.D. Fla. 2010) ("Purpose of Florida's offer of judgment statute is to ***encourage settlement of lawsuits***, and an award of fees under the statute ***is a sanction against a party who refuses to accept a reasonable offer and unnecessarily continues the litigation***." (Emphasis added). See also,*Dictiomatic, Inc. v U.S. Fidelity & Guar. Co.*, 127 F.Supp.2d 1239 (S.D. Fla. 1999) ("Purpose of Florida offer of judgment statute is to terminate all claims, end disputes, and obviate the need for further intervention of the judicial process by encouraging parties to exercise their organic right to contract to a settlement"); *In re Auffant, Bkrtcy*, 274 B.R. 554 (M.D. Fla. 2002) ("Purpose of Florida's offer of judgment statute is to encourage the early settlement and termination on litigation in civil cases generally"); *Segundo v. Reid*, 20 So.3d 933 (Fla. 3rd DCA 2009) ("Offer of judgment statute serves as a sanction for an unreasonable rejection of a good faith offer of settlement"); *Allstate Property & Cas. Ins. Co. v. Lewis*, 14 So.3d 1230 (Fla. 3rd DCA 2009) ("The purpose of statute allowing defendant to recover award of attorney fees due to plaintiff's rejection of offer of judgment is to lead litigants to settle by penalizing those who decline offers that satisfy the statutory

requirements"); *Nichols v. State Farm Mut.*, 851 So.2d 742 (Fla. 5th DCA 2003), cert. denied, rev. granted 913 So.2d 598, approved 932 So.2d 1067, ("A proposal for settlement is intended to end judicial labor, not create more"); *Abbott & Purdy Group Inc. v. Bell*, 738 So.2d 1024 (Fla. 4th DCA 1999) ("Generally, offer of judgment statute creates a substantive right to collect reasonable costs and attorney fees as 'penalties' for the declining party's failure to accept the offer and terminate the litigation"); *Eagleman v. Eagleman*, 673 So.2d 946 (Fla. 4 th DCA 1996) ("Purpose of offer of judgment statute is to encourage litigants to resolve cases early to avoid substantial amounts of court costs and attorney fees; statute serves as penalty for parties who fail to act reasonably and in good faith to settle lawsuits").

Defendant, Vermont Mutual, incorrectly argues that this insurance bad faith case is not an action for damages. Nothing could be further from the truth. This action was absolutely filed by Plaintiffs to recover the Final Judgment entered against Vermont Mutual's insured, Ronald Robbins, plus interest.

While the verdict form in this case will likely be one question requiring a "yes" or "no" answer, ("Did the Defendant, VERMONT MUTUAL INSURANCE COMPANY, handle the claim of RUSSELL NOONAN against its insured, RONALD ROBBINS, in bad faith?"), the jury's verdict will result in Plaintiffs either recovering the damage judgment entered in their favor or not. The Plaintiffs did not file this action simply to get a piece of paper with the word "yes" on it, but rather to collect the judgment that they are entitled to. In fact, in entering into the Consent Judgment, Defendant has conceded that if Plaintiffs are successful in this insurance bad faith case, Defendant will be responsible for the damages referenced above. Specifically, the Consent Judgment provides, "The Parties agree that if the jury or fact finder in any bad faith

proceeding renders a verdict against VMIC, and if the judgment is affirmed in the event of an appeal (or appeals), VMIC shall satisfy the Final Judgment ..., plus accrued interest thereon, which shall begin to accrue as of May 29, 2009, at the applicable Florida statutory rate on the day of entry of the Final Judgment..." (Consent Judgment is not attached hereto based on agreement of the Parties. Defendant does not object to the inclusion of the above language in this Memo, nor dispute its accuracy).

In addition, in looking at the four corners of Plaintiffs' complaint, it is clear that this is an action for damages. Specifically, paragraph 18 of Plaintiffs' complaint states,

> "As a direct and proximate result of the above breaches of its duties of good faith by Defendant, VERMONT MUTUAL, individually and through its agents, employees and representatives, and its failure to settle RUSSELL NOONAN's claim when it could and should have done so, Plaintiffs, RUSSELL NOONAN and DENISE NOONAN, as intended beneficiaries of the insurance contract and as judgment creditors of Ronald Robbins, have sustained damages, including but not limited to the amount of the Final Judgment, loss of use of the money owed to them and non-taxable expenses of the underlying litigation."

In addition to pursuing this matter to collect the final judgment, Plaintiffs filed the subject Proposal for settlement for reasons consistent with the purpose of Florida Statute 768.79. By filing the proposal, Plaintiffs have given Defendant an opportunity to settle the claim at a more than 25% discount (as statutory interest is increasing daily on the judgment, with every day that passes from now through a bad faith verdict the discount to Vermont Mutual also increases). If Plaintiffs' proposal is accepted, this litigation will be terminated as an early settlement will result, neither party will incur expensive litigation costs and obviate the need for further judicial intervention.

Defendant additionally argues that "this 'bad faith' action against Vermont Mutual is akin to a declaratory judgment, wherein the Noonans are seeking a determination of whether Vermont Mutual's conduct in the handling of their claim constitutes 'bad faith'" (Doc. 25 at 6). This insurance bad faith action, as any other insurance bad faith action, is not "akin" to a declaratory judgment action. The Plaintiffs in this action are not seeking an insurance coverage determination. The Plaintiffs have brought the only cause available to them against Vermont Mutual to collect the damages that have been entered in their favor against Vermont Mutual's insured, Ronald Robbins. The Plaintiffs have pled entitlement to damages in this action (Doc. 3), and have sued Vermont Mutual for its bad faith claim handling for the sole purpose to collect said damages.

**C. CASES CITED BY DEFENDANT ARE DISTINGUISHABLE**

In support of its motion, Defendant cites to *Palm Beach Polo Holdings, Inc. v. Equestrian Club Estates Property Owners Association, Inc.*, 22 So.3d 140 (Fla. 4th DCA 2009). This case is clearly distinguishable from the case at hand, as *Palm Beach Polo* dealt with an issue of first impression, to wit: whether or not general proposals for settlement to settle "all claims contained in the complaint" were appropriate for the purposes of awarding attorneys fees when the claims consisted of both non-economic claims and damages. In Palm Beach Polo, the court noted that "the proposals for settlement did not state whether the association was agreeing to entry of any injunctions, or declaration of Palm Beach Polo's grant of way of necessity, yet it claimed to be a proposal to settle all claims." *Id.* at 145. The court went on, "The purposes of section 768.79 include the early termination of litigation. A proposal for settlement in a case such as this one does not satisfy that purpose, as its acceptance would not terminate the litigation nor resolve those claims not

seeking damages." Id. In the case at hand, there can be no dispute that if Defendant were to accept Plaintiffs' Proposal for Settlement, this matter would be terminated with Defendant paying Plaintiffs' damages of $1,200,000.00 (the unsatisfied portion of the final judgment that has been entered against Defendant's insured).

In addition and in support of its motion, Defendant cites to *Miller v. Haymann*, 766 So.2d 1116 (Fla. 4th DCA 2000). In *Miller*, the court specifically pointed out that Florida Statute 768.79 does not apply to a will revocation action. In that case, the court noted that the only claim that arguably would have entitled the prevailing party to attorney fees (the tortuous interference claim) was abated before the proposal for settlement was made, thus finding "that the offer of judgment was not operative as to that count under those circumstances." *Id.* at 1118. Not only is this not an action seeking to revoke a will, but also, there is not any case that Defendant can cite to stating that 1) an insurance bad faith action is not an action for damages, and 2) that Florida Statute 768.76 does not apply to insurance bad faith cases.

Defendant cites to *Yoder Brothers, Inc. v. Weygant*, 973 So.2d 625 (Fla. 2nd DCA 2008), in support of its position. *Yoder Brothers* dealt specifically with a Title VII Florida Civil Rights Act of 1992 (FCRA) sexual harassment claim, to which Section 760.11(5) applied. In *Yoder*, the court held that Florida Statute 768.79 was "inapplicable because it conflicts with the legislature's expressed intent to limit when attorney's fees may be awarded to a prevailing party in an action brought under the FCRA" pursuant to Section 760.11(5). *Id.* at 627. The case before this Honorable Court is not an FCRA claim.

Finally, Defendant also cites to *Rosado v. Beiluch*, 827 So.2d 1115 (Fla. 4th DCA 2002). Rosado was an action for civil forfeiture. While the court noted that "forfeiture actions are civil

proceedings" to which the Florida Rules of Civil Procedure apply, it pointed out that "forfeiture actions are also in rem proceedings" because it is the property which is being proceeded against. *Id.* at 1117. The court held that, "As an in rem proceeding, a forfeiture action is not a 'civil action for damages." *Id.* at 1117. Again, this is not the case here.

## III. CONCLUSION

Based on the argument and law cited above, Plaintiffs respectfully request that this Honorable Court enter an order denying defendant's motion to strike Plaintiffs' Proposal for Settlement.

## LOCAL RULE 3.01 (G) CERTIFICATION

The undersigned certifies that, on August 18th, 2010, Gregory Yaffa, Esq., conferred with Defendant's counsel, E. Brooke Panagakos, Esq., in a good faith effort to resolve the issues raised in Defendant's Motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF this 18th day of **August, 2010** to: John Catizone, Esq., and E. Brooke Panagakos, Esq., Litchfield Cavo, LLP, 600 Corporate Dr., Suite 600, Fort Lauderdale, FL, 33334.

s/Gregory M. Yaffa
Gregory M. Yaffa
Florida Bar # 586412
gyaffa@slawsonlaw.com
Slawson Cunningham, Whalen & Gaspari
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
(561) 625-6260
Attorney for Plaintiffs