UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA -
ORLANDO DIVISION

CASE NO. 6:10-cv-512-Orl-31KRS

RUSSELL NOONAN and DENISE
NOONAN, his wife,

    Plaintiffs,

vs.

VERMONT MUTUAL INSURANCE
COMPANY,

    Defendant.
_____

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiffs Russell Noonan and Denise Noonan, his wife, respectfully submit the following Memorandum of Law in response to Defendant, Vermont Mutual Insurance Company's Motion for Final Summary Judgment. For the reasons set forth below and under Florida bad faith law, Defendant's Motion for Final Summary Judgment should be denied and an order should be entered applying Florida law to this insurance bad faith case.

### I. PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On October 17, 2005, Ronald Robbins made a left hand turn directly into the path of an oncoming motorcycle driven by Russell Noonan, violating Mr. Noonan's right of way.

2. As a result of the collision, Mr. Noonan was transported to Holmes Regional Trauma Center by Brevard County Fire Rescue, where Mr. Noonan remained in a

coma in the Intensive Care Unit for an extended period of time (still in coma on 11/1/05 – 16 days after the crash).

3. When Vermont Mutual received notice of the loss, the Florida Traffic Crash Report was complete and available to Vermont Mutual.

4. When Vermont Mutual received notice of the loss, Mr. Noonan remained in a coma in the Holmes Regional ICU.

5. On November 1, 2005, Vermont Mutual was informed by Allstate that "RONALD [insured] ATTEMPTED TO TAKE LEFT INTO HOSPITAL DRIVEWAY, DID NOT SEE MOTORCYCLE. MARY, PASSENGER DID SEE MOTORCYCLE AND YELLED FOR RONALD TO STOP... RECD SEVERE HEAD INJURIES [Noonan], HAS BEEN IN COMA SINCE 10/17/05 DOL... CLAIMANT SCHED FOR TRACHEOTOMY 10/28/05, STILL IN ICU, IF HE IS STILL ALIVE... PAMELA [Allstate] KNOWS CLMT IS MARRIED... INSD WAS CITED WITH FAILURE TO YEILD ROW... ALLSTATE IS PREPARED TO OFFER THEIR 100 BI LIMITS."

6. On November 2, 2005, Vermont Mutual noted in its claim file, "DUE TO SEVERITY OF CLMT INJURY, WILL ADJUST RESERVE TO 100K..."

7. On November 17, 2005, Vermont Mutual was aware that Allstate, with no medical records[1], offered its $100,000.00 policy limits to Mr. Noonan.

8. On December 1, 2005, Vermont Mutual was informed by Allstate that Mr. Noonan was in the process of being transferred to a long term care facility and

---

1 See Paragraph 10 of Defendant's Statement of Undisputed Material Facts, in which Defendant states, "On or about November 23, 2005, VM received Allstate's investigative file. The file contained no medical records or bills."

2

that, "SPECIALS ALONE ARE MORE THAN THE 100K ALLSTATE POLICY."

9. On December 1, 2005, Vermont Mutual noted in its claim file that before it would settle the claim, "WE WILL REQUIRE AT LEAST A BILL, ADMIT AND D/C [DISCHARGE] SUMMARY.

10. On December 20, 2005, Vermont Mutual set a diary to pull the file 45 days later to see if any medical records or bills came in.

11. On December 20, 2005, Vermont Mutual again noted in its claim file, "RESERVE AT OUR FULL 100K."

12. On February 9, 2006, Vermont Mutual noted in its claim file, "RESERVE IS AT 100K LIMIT. PER ART, ONCE WE HAVE THE BILL AND AT LEAST THE ADMIT D/C OPERATIVE NOTES, WE CAN LOOK INTO SETTLEMENT."

13. In the above February 9, 2006 note, Vermont Mutual noted, "PER ART, NO CALL TO ATTY AT THIS TIME. DIARY 45 DAYS."

14. On February 15, 2006, Vermont Mutual supervisor documented, "THE MORE I THINK ABOUT THIS LOSS ALLSTATE SHOULD HAVE SETTLED THIS CASE ALL AT THE SAME TIME SO THAT OUR INSURED WAS NAMED ON THE RELEASE..."

15. On June 15, 2006, Vermont Mutual documented in its claim file, "RESERVE IS AT OUR FULL 100K ... STATUS WILL NOT CHANGE UNTIL EITHER ATTY OR ALLSTATE SEND ME SOME MEDS."

16. On July 20, 2006, Vermont Mutual noted that a representative of the *Florida* law firm that Vermont Mutual's insured hired as personal counsel, "**QUESTIONED**

3

**WHY WE DID NOT TENDER OUR POLICY AS ALLSTATE ALREADY DID AND WERE WE AWARE OF BAD FAITH"** (Emphasis added).

17. On August 1, 2006, Vermont Mutual claim supervisor Art Frank noted, "WE HAVE OVER $250,000.00 IN BILLS. ONCE WE GET SOME KIND OF DOCUMENTATION ON THE INJURY AND BILLS WE CAN EVALUATE OUR POSITION."

18. On August 30, 2006, Vermont Mutual received "several feet of medical records w/ bills and employment file" of Mr. Noonan.

19. On September 11, 2006, Vermont Mutual documented that it authorized settlement at the full $100,000.00 policy limit, but would not issue the check until Vermont Mutual received an executed release from Mr. Noonan.

20. On October 4, 2006, Vermont Mutual documented again, "WE WILL REQUIRE COMPLETED RELEASE BEFORE DC [DEFENSE COUNSEL] CAN RELEASE THE FUNDS."

21. When Vermont Mutual finally tendered its insured's policy limits to Mr. Noonan, the policy limits were rejected as untimely and as a result, Vermont Mutual's insured was sued in Brevard, County, Florida and now has an excess judgment in the amount of $1,450,000.00 entered against him.

## II. ARGUMENT

### A. Defendant's Motion for Summary Judgment is Premature

As a preliminary matter and despite the fact that Defendant is not entitled to Summary Judgment because questions of fact clearly exist, Plaintiffs respectfully submit that Defendant's motion is premature. At the time of this pleading, Plaintiff's still have not received Defendant's

entire claim file, and as a result, no depositions or any other meaningful discovery have taken place. The Eleventh Circuit Court of Appeals has held that summary judgment should not be granted until the non-moving party has had an adequate opportunity for discovery. *Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865 (11th Cir. 1988); see also *Blumel v. Mylander*, 919 F.Supp. 423 (M.D.Fla. 1996); *Ramos v. Goodfellas Brooklyn's Finest Pizzeria*, 2008 WL 4613059 (S.D. Fla. 2008).

### B. Choice of Law

Defendant, Vermont Mutual, incorrectly argues that Vermont law determines this insurance bad faith claim because "VM's claims handling and investigation occurred in Vermont..." (Defendant's Motion for Summary Judgment).

In *Adams v. Fidelity and Cas. Co. of New York*, 920 F.2d 897 (11th Cir. 1991), the Eleventh Circuit acknowledged that Florida law clearly provides that the substantive law of an insurance bad faith action is determined by the state where performance under the insurance contract was actually to be "performed" *Id.* at fn. 5; See also, *Teachers Insurance Co. v. Berry*, 901 F. Supp. 322 (N.D. Fla. 1995).

The reasoning and results in *Adams* and *Berry* (*Berry* was handled by this law firm) were based on the Florida Supreme Court's decision in *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13 (Fla. 1976), which also addressed a bad faith claim. [Interestingly, the Honorable William Stafford, the District Judge in *Berry*, was the underlying Plaintiff's counsel in *Grounds*]. Although the automobile insurance contract in that case was issued and delivered in Mississippi, the Florida Supreme Court affirmed the applicability of Florida law to the bad faith action because "the obligation of the contract breached by [the carrier] was the obligation to provide [the insured] with a good faith defense to the action. ... the place of performance was Florida,

5

where the cause of action against the [insured] was maintained and was defended by [the carrier.]" *Id.* at 14 – 15.

Recently, the Court in *Shin Crest PTE, Ltd. v. AIU Ins. Co.*, 2008 WL 728388 (M.D. Fla. 2009) reached the same result, finding that the bad faith claim was governed by Florida law, even though the parties agreed that Taiwanese law governed breach of contract and declaratory judgment claims on the contract. Relying on *Grounds, supra,* the Court concluded that "matters concerning performance are governed by the law of the place of performance." *Id.* at *2. Florida was the place of performance "because that is where the lawsuits against [the insureds] were maintained and defended by [the carrier.]" *Id.*

The case of *Virginia Farm Bureau Mutual Ins. Co. v. Dunford*, 877 So.2d 22 (Fla. 4th DCA 2004), (also handled by this firm) is also instructive. *Dunford* involved an automobile accident that occurred in Florida, but with a tortfeasor who resided in Virginia and was insured under a liability policy issued in Virginia. The court did not address whether Virginia or Florida bad faith law would apply to the contractual duties, but did make findings regarding where the insurance contract was performed for purposes of Florida's long arm jurisdiction. Interpreting Florida Statutes section 48.193(1)(g), which provides for jurisdiction where a defendant is alleged to have breached a contract by failing to perform acts in Florida that were required under the contract to have been performed in Florida, the court held that defending the insured in a Florida court was "a contractual obligation to be performed in Florida." *Id.* at 23 – 24. Similarly, the court found that the minimum contacts necessary to support jurisdiction based on the fact that the insurer conducted its duty to defend the insured in a Florida court.

Notably, the court focused on the "activity of the insurer" and distinguished two cases relied upon by the carrier because neither case "involved excess judgments resulting from bad

6

faith occurring in the state in which the suit against the insured was filed." *Id.* at fn. 1. In this regard, the Court suggested again in its conclusion that the insurer's breach of any duty under the contract occurred in the state where a judgment was obtained against the insured, not necessarily the state where the claimant resided: "[The carrier] should have foreseen that a breach of that duty in Florida, resulting in a Florida judgment, would subject it to being hailed into a Florida court." *Id.* at 25.

Regarding Vermont Mutual's contractual duty to pay insurance proceeds to settle the Noonan claim, there is no dispute that said proceeds were required to have been delivered to the claimant attorney's Florida office. In fact, on September 15, 2006, Vermont Mutual claim supervisor, Arthur Frank, sent to defense counsel (Virgil Wright) at his Florida address in Ocala, Fl., the settlement check so that Mr. Wright could deliver said check to Mr. Noonan's Florida attorney once Mr. Wright received a fully executed release. (Bates number VM LC 00292 is attached hereto as "Exhibit A"). Florida law provides that, in the absence of a location for payment that is specified in a contract, the "performance" of making a contractually required payment occurs at the location which the creditor designates for payment. *Carter v. Fleming*, 567 So.2d 535 (Fla. 1st DCA 1990).

In fact, Defendant, in its motion, is absolutely correct as to how Florida handles choice of law issues. In the first paragraph of "IV. CHOICE OF LAW" Defendant wrote:

> "Florida courts have recognized that while the rights and risks of parties in matters of insurance "coverage" are determined under the *lexi loci contractus* doctrine, a "bad faith" case raises questions of "performance" under the insurance contract. *Lumbermans Mut. Cas. Co. v August*, 530 So.2d 293, 295-96 (Fla. 1988); *Clifford v. Commerce Ins. Co.*, 2009 WL 3387737 (S.D. Fla.). Matters concerning performance of a contract are determined by the law of the place of performance. *Government Employees Ins. Co. v. Grounds*, 332 So.2d 13. 15 (Fla. 1976). To determine the place of "performance," courts have considered (1) whether the tort action was

7

brought in Florida, (2) whether the insurer defended the action in Florida, and (3) whether the insurer engaged in settlement negotiations in Florida, regardless of where the insurance contract was "executed." *Clifford*, 2009 WL 3387737 at 1." Motion for Summary Judgment at 11.

Defendant's next paragraph, however, is entirely incorrect. Defendant states that the "second and third factors set forth in *Clifford* are not present in this case." However, all three factors as set forth in Clifford **are absolutely** present here. First, there is no dispute that the tort action was brought in Florida. Second, there is no dispute that the action was defended in Florida by the law firm of Cameron Hodges Coleman LaPointe & Wright, P.A. The fact that Vermont Mutual is based in Vermont and the insured was a resident of New Hampshire has no bearing on where the tort action was defended. While Defendant will argue that Vermont Mutual did not retain the Florida law firm of Cameron Hodges Coleman LaPointe & Wright, P.A to defend its insured in the Florida tort action brought in Brevard County, Florida, the facts remain that Vermont Mutual never objected to said firm defending the action and in fact, acquiesced to said defense. Moreover, Defendant never hired Vermont or New Hampshire counsel to defend its insured. In fact, Paragraph 4 of Defendant's Statement of Undisputed Material Facts provides, "On or about November 1, 2005, VM and Allstate agreed that Allstate would assume the role of primary insurer and VM would assume the role of the excess insurer under the circumstances" (Motion for Summary Judgment at 6). In addition, Defendant admits in its motion that Vermont Mutual provided direction to the Florida defense firm. Specifically, Defendant states, "Within a matter of days after VM had received and reviewed Noonan's medical records, *VM advised defense counsel to tender its $100,000 limit* to Noonan" (Emphasis added) (Defendant's Motion for Summary Judgment at 2). To argue that Vermont Mutual defended the claim in either Vermont or New Hampshire (while Allstate defended in

8

Florida) is a specious, fallacious argument that warrants no further response. Third, as to settlement negotiations, once the money was finally offered to Mr. Noonan, it was offered to him through his Florida attorney by the Florida defense firm acquiesced to by Vermont Mutual.[2]

Under the foregoing authorities, the services that Vermont Mutual was to perform or did "perform" under the insurance contract included: (1) investigating and negotiating the Florida claim; (2) paying the claim, which it was to "perform" by delivering insurance proceeds to the office of claimants' counsel in Florida; (3) providing a legal defense (and/or agreeing to a legal defense) from the claims against its insured, which it was to "perform" in a Florida Court; and (4) hiring Florida adjusting company, Crawford & Co., to attend the underlying mediation in its place. There was no service to be "performed" in Vermont. In fact, as Vermont Mutual was relying on Allstate's investigation,[3] it is important to note that Vermont Mutual was communicating with Allstate's office located in Melbourne, Florida. Simply because Vermont Mutual alleges it "handled" and "investigated" this Florida claim from its Vermont office does not render Vermont bad faith law applicable. Performance under the contract was due in Florida and accordingly, Florida's substantive bad faith law applies to this action.

### C. Insurer's Duty of Good Faith Under Florida Law

Defendant incorrectly argues that "applying the facts of this case to other 'bad faith' cases in Vermont, *Florida* and other jurisdictions, it is evident that VM's conduct cannot be characterized as 'bad faith.'" Motion for Summary Judgment at 4 (Emphasis added). First, pursuant to the cases cited above, Vermont's bad faith law is irrelevant to this cause of action, as

---

2 Paragraph 28 of Defendant's Motion, "On September 15, 2006, VM issued a check for its $100,000 policy limit and sent the check to defense counsel [in Florida] to tender to Gorewitz" (Motion for Summary Judgment at 11).
3 See "Exhibit F" to VM's Motion for Summary Judgment. Vermont Mutual on November 2, 2005 writes to Allstate at 7380 Murrell Rd., Suite 101, Melbourne, FL 32940, requesting Allstate's full investigative file. In addition, "Exhibit G" to VM's Motion, documents that Allstate, from its same Florida office was communicating (i.e. aiding with the investigation) with Vermont Mutual.

9

Florida's bad faith law applies due to the fact that performance under the contract was due in Florida. Second, and for the reasons set forth below, applying the facts of this case to other Florida bad faith cases clearly illustrate that Vermont Mutual acted in bad faith in its claims handling of the Noonan claim against its insured.

Florida has recognized a common law cause of action for insurance bad faith since 1938. *See Automobile Mut. Indem. Co. v. Shaw*, 134 Fla. 815, 184 So. 852 (Fla. 1938). In *Shaw*, the court held an "insurance company in the settlement of claims and in conducting a defense before the court on suits filed should be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business." *Id*. at 859. "Under Florida law it is well settled that an insurer is liable for the excess over policy limits of a judgment against its insured if it fails in its duty to exercise good faith in the defense or settlement of the claim upon which judgment is based." *Easley v. State Farm Mut. Auto, Ins. Co.*, 528 F.2d 558, 559 (5th Cir. 1976).

In a frequently cited opinion, the Supreme Court of Florida in *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980), summarized a liability insurer's well-established duties owed to its insured under Florida law:

> For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to the litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. *Liberty Mutual Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir. 1969). This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. *Ging v. American Liberty Ins. Co.*, 423 F.2d 115 (5th Cir. 1970). The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Consistent with Florida case law, Florida Standard Jury Instruction (Civ.) 404.4 governing bad faith actions provides: "An insurance company acts in bad faith in failing to settle claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his or her interests."

"[O]rdinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury.'" *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 680 (Fla. 2004) (quoting *Boston Old Colony*, 386 So.2d at 785). "Moreover, where material issues of fact which would support a jury finding of bad faith remain in dispute, summary judgment is improper." *Id.* Echoing these sentiments, the Eleventh Circuit holds with equal conviction when applying Florida law that "[w]hether the insurer has acted in bad faith in refusing to settle a claim is a question of fact for the jury." *Easley*, 528 F.2d at 559.

The overwhelming body of case law in Florida[4] and the Eleventh Circuit[5] holds that an insurer's failure to exercise good faith presents a jury question absent unusual circumstances (not present here) where the undisputed facts permit the trial court to make that determination as a

---

[4] *Berges*, 896 So.2d at 680; *Boston Old Colony*, 386 So.2d at 785; *Campbell v. Government Employees Ins. Co.*, 306 So.2d 525, 530 (Fla. 1974); *Gutierrez v. Yochim*, 2009 WL 3787266, at *4 (Fla. 2d DCA Nov. 13, 2009); *Menchise v. Liberty Mut. Ins. Co.*, 932 So.2d 1130, 1133 (Fla. 2d DCA 2006); *Farinas v. Florida Farm Bureau Gen'l Ins. Co.*, 850 So.2d 555, 559 (Fla. 4th DCA 2003), *rev. denied*, 871 So.2d 872 (Fla. 2004); Powell v. *Prudential Prop. & Cas. Ins. Co.*, 584 So.2d 12, 14-15 (Fla. 3d DCA 1991), *rev. denied*, 598 So.2d 77 (Fla. 1999); *Higgs v. Indus. Fire & Cas. Co.*, 501 So.2d 644, 645 (Fla. 3d DCA 1986), *rev. denied*, 511 So.2d 298 (Fla. 1987); *Thomas v. Lumbermens Mut. Cas. Co.*, 424 So.2d 36, 38 (Fla. 3d DCA 1982); *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272, 277 (Fla. 1st DCA 1980); *Government Employees Ins. Co. v. Grounds*, 311 So.2d 164, 168 (Fla. 1st DCA 1975), *cert. discharged*, 332 So.2d 13 (Fla. 1976); *Central Nat'l Ins. Co. v. Gonzalez*, 295 So.2d 694, 696 (Fla. 3d DCA 1974).

[5] *Geico Gen'l Ins. Co. v. McDonald*, 315 Fed. Appx. 181, 184, 2008 WL 4946221, at *2 (11th Cir. 2009); *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1278 (11th Cir. 2007); *Easley*, 528 F.2d at 559; *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475, 480 (5th Cir. 1969); *American Fid. & Cas. Co. v. Greyhound Corp.*, 258 F.2d 709, 711 (5th Cir. 1958); *Springer v. Citizens Cas. Co. of N.Y.*, 246 F.2d 123, 129 (5th Cir. 1957).

matter of law. Indeed, in *Kearney v. Auto-Owners Ins. Co.,* 2009 WL 3363677, *6 (M.D. Fla. Oct. 19 2009), Judge Bucklew recently observed that "[a]lthough on occasion the facts of a case allow a court to rule on a bad faith claim as a matter of law at summary judgment," such cases are "rare."

**D.    Contrary to Defendant's Motion, a Demand is Not Necessary as a Precursor to Bad Faith in Florida**

Disregarding controlling Florida authority, Vermont Mutual argues that it "cannot be in 'bad faith' where it tendered its policy even before receiving a demand." Motion for Summary Judgment at 3. Vermont Mutual has misstated Florida law.

Florida law recognizes that an insurer can be in bad faith even before a written settlement offer is sent. *Hartford Accident and Indemnity Insurance Company v. Mathis,* 511 So.2d 601 (Fla. 4th DCA 1987), *cert. denied,* 518 So.2d 1275 (Fla. 1987). *Mathis* was handled by this law firm. Additionally, Florida law holds that "[w]here liability is clear and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an <u>affirmative duty</u> to initiate settlement negotiations." *Powell v. Prudential,* 584 So.2d 12 (Fla. 3rd DCA 1991), *rev. denied,* 598 So.2d 77 (Fla. 1992). The fact that the injured party made no specific monetary demand and subsequently rejected the insurer's tender of the policy limits does not, as a matter of law, entitle the insurer to judgment without consideration of other circumstances. A formal offer to settle is not a prerequisite to imposition of liability for an insurer's bad faith refusal to settle. The insurer has the burden of showing that there was no realistic possibility of settlement within policy limits.

As U.S. District Court Judge Maurice Paul stated in *Snowden v. Lumbermens,* 358 F.Supp.2d 1125 (N.D.Fla. 2003): "Florida courts have long since replaced the offer of settlement

12

requirement with a totality of the circumstances approach, using the presence or absence of an offer to settle as one of the appropriate criteria." Additionally, the *Snowden* Court held that, "as the amount by which an anticipated claim exceeds the policy limits increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases" *Id.* at 1129. *Snowden* was handled by this law firm.

Relying on *Johnson v. Geico Gen. Ins.* Co., 318 Fed.Appx. 847 (11th Cir. 2009), Vermont Mutual argues that, "an insurer is allowed a reasonable time to investigate a claim and no obligation exists to tender the policy limits in advance of a settlement offer without time for investigation." (Motion for Summary Judgment at 16). In addition, Vermont Mutual incorrectly states in its motion that "No obligation to tender its policy limits arose until the investigation was complete." (Motion for Summary Judgment at 16). However, and as stated above, "as the amount by which an anticipated claim exceeds the policy limits increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases" *Id.* Vermont Mutual had enough information in its possession to know that the value of Mr. Noonan's claim grossly exceeded the combined primary and excess policies prior to receiving any medical records. On November 1, 2005, Vermont Mutual was told that Mr. Noonan remained in a coma in the ICU since the date of the loss. On November 2, 2005, Vermont Mutual adjusted its reserves on the Noonan claim to the policy limits of $100,000.00. On November 10, 2005, Vermont Mutual received Allstate's investigative file, which contained the recorded statement of Mr. Robbins, who stated, "Yeah, he [Noonan] head a head injury. I think he has emphysema because breathing awful, he was trying to get his breath" [SP] (Mr. Robbin's recorded statement transcript that was attached to Allstate's November 10, 2005 letter to Vermont Mutual is attached hereto as "Exhibit B"). In addition, on November 17, 2005, Vermont Mutual was aware

that Allstate, with no medical records, offered its $100,000.00 policy limits to Mr. Noonan. Vermont Mutual was aware that Allstate, on November 21, 2005, delivered a check for the primary $100,000.00 policy limits without any medical records in its possession. On December 1, 2005, Vermont Mutual was informed by Allstate that Mr. Noonan was in the process of being transferred to a long term care facility and that Mr. Noonan's past medical bills alone (not even taking into consideration future economic and past and future noneconomic damages), exceeded the underlying $100,000.00 policy limits. By August 1, 2006, Vermont Mutual knew that Mr. Noonan's medical bills exceeded $250,000.00. By August 30, 2006, Vermont Mutual received "several feet of medical records w/ bills and employment file" pertaining to Mr. Noonan, yet despite its claim file entries that all it required was minimal medical documentation, Vermont Mutual refused to tender its insured's policy limits (Vermont Mutual claim activity log entry dated September 5, 2006, referencing the August 30th receipt of medical records is attached hereto as "Exhibit C"). Clearly, Vermont Mutual had enough information in its possession to know that its insured was at risk for significant personal exposure. Despite this Vermont Mutual refused to settle the claim and secure a release of its insured, and now argues that its actions were justified because its investigation was not "complete."

Based on Defendant's claim activity log (Exhibit "E" to Defendants Motion for Summary Judgment), it is clear that Defendant simply refused to settle the claim until it first had medical records in its possession and then until it received a signed release. It is common practice in Florida that insurers will settle claims when the carrier knows its insureds are at risk above the policy limits and request that the claimant's attorney simply provide a release and records at a later date to document its file or request that the attorney provide a signed medical authorization so that the carrier can request the records itself. Pursuant to *Powell*, an insurer can be found to

have acted in bad faith in delaying an offer to settle. *Id.* at 14. Despite Defendant's position, Vermont Mutual clearly had sufficient information in its possession to tender its insured's policy limits without any medical records. Direct evidence of this is the fact that Allstate tendered its insured's policy limits without having a single medical record in its possession. Clearly, Allstate knew that the fiduciary duty owed in Florida to its insured required the tender of its policy limits (even prior to receiving medical records) as well did the insured's personal counsel who **"QUESTIONED WHY WE DID NOT TENDER OUR POLICY AS ALLSTATE ALREADY DID AND WERE WE AWARE OF BAD FAITH"** (Emphasis added).[6] In addition, Defendant's own claim activity log documents that its policy limits should have been tendered prior to it having received any medical records with its February 15, 2006 entry in which Vermont Mutual supervisor documented, "THE MORE I THINK ABOUT THIS LOSS ALLSTATE SHOULD HAVE SETTLED THIS CASE ALL AT THE SAME TIME SO THAT OUR INSURED WAS NAMED ON THE RELEASE...".[7] Again, Allstate delivered a check for the full policy limits prior to receiving any medical records.

There is no case in Florida that stands for the proposition that an insurer's fiduciary duty to protect its insured is only triggered once it has medical bills and/or records in its possession.

### E. Florida does not Recognize Comparative Bad Faith as a Defense

Vermont Mutual attempts to shift the blame for its obvious dereliction of its duties to the Noonans' underlying attorneys and Allstate. Defendant argues that "A claim for bad faith based upon an insurer's purported failure to 'timely' tender its limit cannot stand when a plaintiff or plaintiff's counsel contributes to or causes the delay by failing to provide medical

---

6 See July 20, 2006 entry of Defendant's claim activity log attached to Defendant's Motion for Summary Judgment as "Exhibit E."
7 See February 15, 2006 entry of Defendant's claim activity log attached to Defendant's Motion for Summary Judgment as "Exhibit E."

15

documentation" (Motion for Summary Judgment at 5). Apart from the unwarranted character attack by Vermont Mutual, the Supreme Court of Florida has clearly stated "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Berges*, 896 So.2d at 680. *Accord*, *McDonald*, 315 Fed. Appx. 181, 184, 2008 WL 4946221, at *2.

In addition, Defendant argues that "Allstate also failed to provide sufficient information" to Vermont Mutual. Florida law is clear that there is no affirmative defense of comparative bad faith in Florida. *Nationwide Prop. & Cas. Ins. Co. v. King*, 568 So.2d 990 (Fla. 4th DCA 1990).

Defendant also argues that "Noonan's medical records created issues as to liability and damages" (Motion for Summary Judgment at 19). Florida, (where the crash occurred and the underlying case litigated), is a comparative fault state. The police report documented that Vermont Mutual's insured was cited for the crash for failing to yield right of way and that Mr. Noonan was not guilty of any improper driving whatsoever. With the severity of Mr. Noonan's injuries, even if a jury were to apportion only a small percentage of fault to Mr. Robbins, Mr. Noonan's case still placed Vermont Mutual's insured at risk as Mr. Noonan's claim still dwarfed the liability policy limits carried by Mr. Robbins. In addition, pursuant to *Powell*, a carrier is not required to tender its insured's policy limits only in cases where its insured is 100% liable, but rather, "where substantial injuries and potential liability of insured are obvious, failure to offer policy limits constitutes bad faith even where there is no assurance that action can be settled." *Id.* at 14. This argument is simply a theory developed after the fact by Vermont Mutual to justify its refusal to settle the claim without medical records. If Vermont Mutual truly believed this argument, it never would have reserved the claim at its policy limits prior to receiving any medical records, as it did on November 2, 2005.

Defendant alleges that the gravamen of this claim is not that it "refused to settle" the Noonan claim (because there was no demand made), but rather that it simply delayed in tendering or did not timely tender the policy limits. While, pursuant to *Powell*, a delay in tendering policy limits can be deemed bad faith, Defendant's claim activity log documents that Vermont Mutual did refuse to settle the claim until it received medical records.

Despite Vermont Mutual's argument that it is entitled to summary judgment because it "more than met its duty of good faith," the law in Florida is clear that bad faith is a question of fact for the jury. Vermont Mutual states that "VM investigated the facts, attempted to gather medical documentation, was prepared to tender its limits upon receipt of minimal medical records or bills, and did so virtually immediately upon such receipt" (Motion of Summary Judgment at 23). The fact that Defendant's claim file documents that all it required was the admission, discharge and operative notes and bills of Mr. Noonan, clearly shows that it was not requesting these records to "investigate liability and damages" (Pg. 19 of its Motion for Summary Judgment). In addition, Defendant did not tender its limits "virtually immediately upon receipt" of the records, because Vermont Mutual, once it received the records on August 30, 2006, refused to tender the policy limits until it received an executed release from Mr. Noonan. On October 4, 2006, almost one full month after it authorized the settlement, Vermont Mutual documented "WE WILL REQUIRE COMPLETED RELEASE BEFORE DC [DEFENSE COUNSEL] CAN RELEASE THE FUNDS." Under Florida law, pursuant to *Powell* and *Snowden*, by failing to tender its insured's policy limits when Vermont Mutual knew that it was a case of clear liability and that the damages suffered by Mr. Noonan greatly surpassed its insured's policy limits, Vermont Mutual is guilty of bad faith. Whether or not Vermont met its duty of good faith under Florida law is a question of fact for the jury.

## F. The Cases Cited by Vermont Mutual Are Easily Distinguishable.

The below-listed decisions relied on by Vermont Mutual as authority for the proposition that the insurer is entitled to summary judgment are distinguishable because all the cases involve a legal impediment to recovery not present here; completely inapposite factual circumstances; and/or are unpersuasive.

Defendant relies on the case of *Shin Crest Pte, Ltd. v. AIU Ins. Co.*, 605 F.Supp.2d 1234 (M.D. Fla. 2009), in support of its position. *Shin Crest* dealt with a multiple insured scenario with highly contested liability where the plaintiff was willing to settle the claim for the policy limits against one insured under the policy, but not the other. In accordance with Florida law, the carrier correctly settled the claim securing a release of one of its insureds, rather than refusing to settle and exposing both insureds. This is not the case here, as liability was clear against Vermont Mutual's insured and this was not a multiple insured situation where the claimant was refusing to release one insured, but not the other.

*Maldonado v. First Liberty Ins. Co.*, 546 F.Supp.2d 1347 (S.D. Fla. 2008), dealt with a wrongful death claim in which the claimant's attorney sent a settlement offer demanding not only the policy limits, but also that the insured provide a financial affidavit (asset affidavit). The carrier delivered the check, but the insureds refused to fill out the personal information contained in the affidavit, despite the carrier's warnings to its insureds that if they did not provide the information, they would be exposed beyond the policy limits. The insureds' refusal to provide the information was outside the carrier's control. These facts bare no resemblance to the facts at hand.

*Aboy v. State Farm Mut. Auto Ins. Co.*, 2010 WL 727967 (S.D. Fla. 2009) dealt with a

case where State Farm offered to pay its insured's $15,000.00 policy limits within four days of being informed that the claimant underwent a neck surgery and had medical bills totaling more than $50,000.00. Judge Huck noted in the opinion that it was reasonable for State Farm to believe that the claimant (having been released from the hospital the same day he was admitted) did not incur damages in the amount of $15,000.00. In this case, Vermont Mutual knew that Mr. Noonan's injuries surpassed the combined value of it's and Allstate's policy limits.

*Johnson v. Geico Gen. Ins. Co.,* 318 Fed.Appx. 847 (11th Cir. 2009), dealt with a situation where the carrier offered its insured's policy limits within 33-days of the crash. In the case at hand, Vermont Mutual did not send a check for its insured's policy limits to defense counsel (with instructions to hold on to it until Mr. Wright received an executed release) until September 15, 2006, which was almost one full year after the crash (and still the money had not been tendered).

### III. CONCLUSION

Because Florida bad faith law applies and disputed issues of fact remain, this court should deny defendant's motion for summary judgment. *Berges,* 896 So.2d at 680 ("[W]here material issues of fact which would support a jury finding of bad faith remain in dispute, summary judgment is improper"). In addition, Plaintiff's respectfully request that this Honorable Court enter an order that Florida bad faith law applies to this action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF this 7th day of September, **2010** to: John Catizone, Esq., and E. Brooke Panagakos, Esq., Litchfield Cavo, LLP, 600 Corporate Dr., Suite 600, Fort Lauderdale, FL, 33334.

s/Gregory M. Yaffa<br>
Gregory M. Yaffa<br>
Florida Bar # 586412<br>
gyaffa@slawsonlaw.com<br>
Slawson Cunningham, Whalen & Gaspari<br>
2401 PGA Boulevard, Suite 140<br>
Palm Beach Gardens, FL 33410<br>
(561) 625-6260<br>
Attorney for Plaintiffs