**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**Case No. 6:10-cv-512-Orl-31KRS**

RUSSELL NOONAN, and
DENISE NOONAN, his wife,

Plaintiffs,
v.

VERMONT MUTUAL INSURANCE
COMPANY,

Defendant.
_________________________________________/

**DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant, Vermont Mutual Insurance Company ("VM"), by and through its undersigned counsel and pursuant to the Court's Order of August 5, 2010 [D.E. 26], files this Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment. This Reply addresses each of Noonan's arguments separately and is limited to rebuttal only.

**ARGUMENT**

**A. NOONAN HAS NOT DISPUTED VM'S FACTS**

Noonan's response brief does not include a response to VM's Statement of Undisputed Facts, thus, VM's Statement of Undisputed Facts should be deemed admitted. The response includes a purported statement of facts, but without any evidentiary support, thus, they are not facts for purposes of Rule 56.

**B. CHOICE OF LAW**

The parties agree that the law which governs a bad faith action in Florida

is the law of the "place of performance." The Noonans assert, however, that VM "performed" under its insurance contract in Florida because:

(1) VM "did not object" to Allstate's hiring of Florida defense counsel;

(2) VM "did not hire" Vermont or New Hampshire defense counsel;

(3) VM "sent its policy limit check" to the Florida law firm hired by Allstate.

[D.E. 29 at 7-9] (emphasis added).[1]

The arguments asserted by the Noonans lack merit, as they merely establish that Noonan does not appreciate the respective roles of the primary insurer (Allstate) and excess insurer (VM). An excess insurer generally has no defense obligation, because that is the obligation of the primary carrier. *Matter of Celotex Corp*., 222 B.R. 644 (M.D. Fla. 1998). The insurer who has the duty to defend also has the right to control the defense. *See, e.g., Zurich American Ins. Co. v. Frankel Enterprises, Inc.*, 509 F.Supp.2d 1303, 1311 (S.D. Fla. 2007). Thus, to the extent that the failure to act could constitute "performance," VM's "failure to object to" Allstate's retained counsel is not "performance in Florida." Similarly, the notion that VM's purported failure to hire Vermont or New Hampshire counsel to defend Robbins in the Florida action constitutes "performance" is disingenuous. Noonan offers no legal support for the proposition that VM had any defense obligation at all, let alone an obligation to hire an out-of-state lawyer to defend a Florida tort action.

[1] The Noonans also suggest that Florida law should apply because VM hired an independent adjuster to attend mediation in the underlying action. Mediation occurred on June 14, 2007, approximately eight months after VM had tendered its policy limit, after Noonan/Gorewitz had rejected the tender as purportedly being untimely and after VM was accused of "bad faith." *See* Vermont Mutual claims note dated April 30, 2007, attached as composite Exhibit E to VM's Motion for Summary Judgment. [D.E. 24]. Noonan is clearly grasping at straws.

Finally, the fact that VM sent its policy limit check to Allstate's Florida defense counsel is not a dispositive fact as to choice of law. If it were, every case in which an insurer sent a settlement check to a Florida claimant's counsel or defense counsel would be governed by Florida law. Noonan has not cited a single case supporting its proposition. Noonan's reliance on *Carter v. Fleming,* 567 So. 2d 535 (Fla. 1st DCA 1990), is misplaced. The question in *Carter* was which county was the proper venue for a noteholder's action against a guarantor. *Carter* had nothing to do with choice of law in any context.

**C. NOONAN'S RESPONSE FAILS UNDER RULE 56**

A party opposing a summary judgment motion must rely on more than conclusory statements or unsupported allegations which have no probative value. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985). The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House*, 146 F.3d 832, 834 (11th Cir. 1998)(citations omitted). As shown below, Noonan's response falls far short of that standard.

**1. Noonan Asserts Only Conclusory Statements In Opposition**

Noonan argues that VM acted in bad faith because it is "common practice" in Florida that insurers will settle claims first and then request that the claimant's attorney simply provide a release and/or records at a later date to document the insurer's file. [D.E. 29 at 14]. He provides no evidentiary or legal support for his statement that this is a "common practice" and no legal authority suggesting that the mere failure to follow a "common practice" (rather than an express or implied

contractual duty) is probative of insurer bad faith. In fact, the case law mandates a contrary conclusion. VM was not required to tender its policy limit based upon mere representations by Allstate or Robbins as to Noonan's injuries.[2] VM had no contractual duty, express or implied, to tender its limit and wait for the medical documentation to be produced at a later date.[3] Instead, VM was entitled to investigate the claim. *See DeLaune v. Liberty Mut. Ins. Co.,* 314 So. 2d 601, 603 (Fla. 4th DCA 1975)(one party does not have to accept at face value the medical information furnished by the other party without any inquiry and even if some information is provided by a claimant, an insurer may still conduct its own investigation). If this Court were to accept this purported "common practice" as probative of bad faith, an insurer's ability to investigate claims would be virtually extinguished and would be replaced with an insurer having to rely on claimants' mere verbal representations. There is no such requirement in Florida law.

Noonan also argues that VM knew the claim exceeded its policy limit because the reserve was set at the policy limit. The amount of VM's reserve, however, has nothing to do with whether it acted in bad faith in this case. The setting of a reserve is a mandatory policy set by the legislature and the insurance commissioner and some courts have found that, because of this, it cannot accurately and fairly be equated with an admission of liability or the value of any particular claim. *See Union Carbide Corp. v. Travelers Indemnity Co*., 61 F.R.D.

---

[2] Noonan suggests that VM had "sufficient" information from both Allstate and Robbins. However, it is undisputed that Allstate had no medical records or bills in its possession and only relayed information it had learned from an unknown source. Noonan points out that Robbins said he believed Noonan had a "head injury" and possibly had emphysema. [D. 29 at 13]. VM is not required to take a layperson's description of a claimant's injuries as being determinative of a claim in excess of $200,000.

[3] Noonan does not even attempt to address what would happen in situations where the medical documentation was produced after the fact and did not support the insurer's prior tender.

411, 413 (W.D. Pa. 1973). VM recognizes that the amount of an insurer's reserve might be relevant in a case where, for example, a large reserve is set but only a minimal amount is offered. *See e.g., Central Georgia Anesthesia Services, P.C. v. Equitable Life Assurance Society of the United States*, 2007 WL 2128184 (M.D. Ga.)(finding reserve amount relevant to bad faith where insurer was losing money on disability policies and incentivized its employees to deny or take a hard stance on claims in an effort to resolve them for less than the reserve amount). But the instant action is not such a case. Instead, VM reserved the Noonan claim at the policy limit and offered the policy limit once it had documentation. The question is whether VM was entitled to documentation before making an offer, not whether the claim was appropriately reserved.

Noonan also asserts that VM was in bad faith because it requested a release of Robbins before Allstate's defense counsel could release the $100,000. Noonan offers no legal authority to support its position. Again, Florida case law suggests the contrary conclusion. When an insured has surrendered to its insurers all control over a claim, the insurers are obligated to make settlement decisions in good faith with the insured's best interest in mind. *See Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783 (Fla.1980). If VM had paid its policy limit and obtained a release of itself but not of Robbins, thus putting its own interests above those of the insured, VM would likely be facing a bad faith action today by Robbins instead of Noonan. Thus, the argument that VM's attempt to seek a release of its insured constitutes bad faith is specious. It is also a red herring, because Noonan rejected VM's tender as untimely. There is no

evidence in the record that Noonan rejected VM's tender because VM required a release. Noonan's argument is completely without merit.

**2. <u>Allstate's Actions Are Not Probative Of VM's Duties Or Its Alleged Bad Faith</u>**

Noonan contends that "direct evidence" of VM's bad faith is that Allstate tendered its insured's policy limits without having a single medical record in its possession. [D.E. 29 at 15]. Once again, Noonan fails to offer any legal support for the contention that a primary carrier's actions are probative of an excess carrier's duties or obligations relative to "bad faith."

There are different duties placed on primary and excess insurers. *National Union Fire Ins. Co. of Pittsburgh v. Travelers Ins. Co.*, 214 F.3d 1269 (11th Cir. 2000). Given these different duties, Allstate's actions as the primary carrier in paying its policy limit in the complete absence of any documentation would not be probative as to whether VM as the excess carrier acted in bad faith. Moreover, such purported evidence should be deemed inadmissible given its potential prejudicial value. *See, e.g., Certain Underwriters of Lloyd's v. Gen. Acc. Ins.*, 699 F. Supp. 732, 742 (S.D. Ind. 1988)(evidence of excess carrier's action or lack of action with respect to the primary carrier's defense of the underlying suit not relevant to bad faith failure to settle case between excess and primary carrier and would confuse or prejudice the jury).

**3. <u>Mischaracterized Statements Are Not Probative Of VM's Alleged Bad Faith</u>**

Noonan claims to have "direct evidence" of VM's bad faith in the form of a statement allegedly made by the insured's <u>personal counsel</u> and a supervisor's

claim note. [D.E. 29 at 15]. With regard to the first statement, the record reveals that the insured's personal counsel's paralegal (not counsel) asked VM why it did not tender its limit when Allstate did.[4] VM responded that it was waiting for medical documentation that Noonan/Gorewitz had refused to provide.[5] For the same reasons stated above as to why Allstate's actions are not probative, a counsel or paralegal's question or opinion rendered prior to knowing the full facts is hardly indicative of whether VM acted in bad faith. As to the second statement, VM's February 15, 2006 claim note does not suggest that VM should have tendered its limit sooner, but rather that VM and Allstate should have both settled at the same time so that Robbins could have been included on the Allstate release.[6] The rest of the entry states that VM will follow up on medical documentation which Allstate should be providing. Thus, Noonan's claims of "direct evidence" are nothing more than irrelevant gross mischaracterizations.

**4. Misapplication Of Supportive Cases**

In its motion, VM set forth the legal proposition that a demand is a prerequisite to a bad faith action not only in Vermont but also in Florida, subject to the *Powell* exception (where liability is clear and damages are significant). Noonan asserts that a demand is not a necessary prerequisite to a bad faith action in Florida, citing *Snowden v. Lumbermans Mut. Cas. Co.*, 358 F.Supp.2d 1125 (N.D. Fla. 2003) in support of his contention. Contrary to Noonan's argument, however, *Snowden* does not stand for the proposition that a demand is no longer a prerequisite to a bad faith action. Instead, *Snowden* merely

[4] *See* Vermont Mutual claims note dated July 20, 2006. [D.E. 24, Ex. E].
[5] *Id*.
[6] *See* Vermont Mutual claims note dated February 15, 2006. [D.E. 24, Ex. E].

reiterated the *Powell* exception and found that under some circumstances involving clear liability and significant damages, an offer to settle is not a prerequisite to excess liability. Likewise, *Hartford Accident and Indemnity Ins. Co. v. Mathis*, 511 So. 2d 601 (Fla. 4th DCA 1987), which was decided before *Powell*, was merely a precursor to *Powell* as it found that the insurer breached its duty of good faith when it failed to settle for the $25,000 policy limit when there was absolute liability and significant damages. In other words, what is referred to as the *Powell* exception has been stated both before and after *Powell,* but contrary to Noonan's contention there is no Florida case stating that a demand is not a prerequisite to a bad faith case which is not based on the *Powell* exception. Thus, the rule in Florida remains that a demand is generally a prerequisite.[7]

In addition, Noonan cannot legitimately assert that this was a *Powell* case, because liability was not "clear." As stated in VM's motion, the medical records indicate that Noonan may have had a seizure immediately before the collision. [D.E. 24 at 10]. This case is also not a *Powell* case because this case is about an insurer's right to obtain information as part of its investigation rather than taking things at face value. An insurer is not required to determine that damages

[7] Although Noonan attempts to distinguish several cases relied on by VM, whatever factual distinctions that might exist are irrelevant to the legal propositions for which they have been cited. For example, VM relies on *Shin Crest Pte, Ltd. v. AIU Ins. Co*., 605 F.Supp.2d 1234 (M.D. Fla. 2009), not because this case presents a multiple insured situation, but rather for proposition that bad faith actions can be disposed of at the summary judgment stage and that the *Shin Crest* court remarked that Justice Wells' dissent in *Berges* was "well-reasoned." VM cites to *Maldonado v. First Liberty Ins. Co*., 546 F.Supp.2d 1347 (S.D. Fla. 2008) and *Aboy v. State Farm Mut. Auto Ins. Co*., 2010 WL 727967 (S.D. Fla. 2009) because Noonan refused to cooperate with VM's requests for medical documentation and *Maldonado* and *Aboy* also involved uncooperative plaintiffs. The courts recognized a limit as to what steps an insurer must take to obtain cooperation from a party. *Johnson v. Geico Gen. Ins. Co*., 318 Fed. Appx. 847 (11th Cir. 2009) was cited because an insurer is permitted a reasonable time to investigate. Noonan's attempt to distinguish these cases fails, because the distinctions are irrelevant to the legal propositions for which the case are cited.

are significant based on mere representations. To even suggest that this case should be treated as a *Powell* case would be to allow Noonan and other plaintiffs to benefit by refusing to provide any medical records to defendants' insurers whenever that medical documentation might reveal facts pertinent to liability, comparative fault, prior medical history, etc. Such conduct must not be sanctioned. To their credit, Noonan's present counsel do not even attempt to explain or justify why Noonan's former counsel failed to respond to VM's (and Allstate's) numerous requests for documentation, a noble concession on their part that there is no legitimate explanation or justification for such conduct.

**D. VM DOES NOT ARGUE COMPARATIVE BAD FAITH**

Contrary to Noonan's contention, [D.E. 29 at 15-16], VM has not argued "comparative bad faith." As an initial matter, the other party to VM's insurance contract is Robbins, and nowhere does VM suggest that Robbins acted in bad faith. VM also does not accuse Allstate of bad faith anywhere in its motion. VM has also not characterized Noonan's conduct as bad faith or "comparative bad faith." Instead, VM has suggested that the conduct of Noonan's counsel is redolent of a "bad faith setup," i.e., an attempt to set VM up for a subsequent claim of bad faith against VM. VM uses the conduct of Noonan and Gorewitz for the sole purpose of disproving VM's alleged bad faith by showing that in light of their conduct (the actual cause of any alleged delay), VM's tender of its policy limit upon the receipt and review of the medical documentation cannot fairly be characterized as "untimely," "unreasonable," or in "bad faith."

### E. Summary Judgment Remains Appropriate

Noonan objects to the entry of summary judgment in favor of VM on the purported premise that such relief is only appropriate in “unusual circumstances” and (in their view) this is not one of those “rare” cases. Contrary to Noonan’s contention, however, this is a case that can and should be resolved on summary judgment in light of these undisputed facts: (1) VM was an excess carrier sitting above a $100,000 Allstate policy; (2) VM tendered its limits without having received a demand; (3) VM requested medical documentation from Noonan and Gorewitz on at least three occasions to evaluate the claim, however, Noonan and Gorewitz never responded and never provided any records or bills until suit was filed and even then only after a motion to compel was threatened against Gorewitz, facts which are neither disputed nor justified by Noonan; (4) When the medical documentation was finally received and reviewed, it was only a matter of days before VM advised defense counsel to tender its $100,000 limit to Noonan. It is difficult to imagine a case more appropriate for summary judgment.

## CONCLUSION

For the reasons stated above and in its Motion and Memorandum of Law, VM respectfully requests an entry of summary judgment in its favor.

Respectfully submitted,

/s/ John R. Catizone
JOHN R. CATIZONE
Florida Bar No.: 695491
catizone@litchfieldcavo.com
E. BROOKE PANAGAKOS
Florida Bar No.: 0029312
panagakos@litchfieldcavo.com
Litchfield Cavo, LLP

600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
954.689.3000 (Tel.)
954.689.3001 (Fax)
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of September, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Fred A. Cunningham, Esquire
Gregory Yaffa, Esquire
Slawson, Cunningham, Whalen & Gaspari, P.L.
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
*Attorney for Plaintiffs*

/s/ John R. Catizone
JOHN R. CATIZONE