# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**RUSSELL NOONAN and DENISE NOONAN,**

**Plaintiffs,**

**-vs-** **Case No. 6:10-cv-512-Orl-31KRS**

**VERMONT MUTUAL INSURANCE COMPANY,**

**Defendant.**

---

## ORDER

This cause comes before the Court without oral argument upon consideration of Defendant Vermont Mutual Insurance Company's ("Defendant") motion for summary judgment (Doc. 24), Plaintiffs Russell and Denise Noonan's (collectively "Plaintiffs") responsive memorandum (Doc. 29), and Defendant's reply (Doc. 30). Also before the Court is Defendant's Motion to Strike Plaintiffs' Notice of Proposal of Settlement (Doc. 25), and Plaintiffs' responsive memorandum (Doc. 27).

**I. Background**

This bad faith case arises from an accident on October 17, 2005, in which Mr. Noonan was injured when his motorcycle collided with the side of an automobile operated by Ronald Robbins. Robbins was driving an automobile owned by his sister, Elizabeth Powers, and insured by Allstate Insurance Company ("Allstate") with liability limits of $100,000.00 per person. At the time of the accident, Robbins was insured under an auto policy issued by Defendant, which also had a policy limit of $100,000.00 per person.

On October 31, 2005, Defendant was notified of the accident by Allstate. Thereafter, on November 1, 2005, Defendant and Allstate agreed that Allstate would assume the role of the primary insurer and Defendant would assume the role of the excess insurer. Allstate also advised Defendant that Robbins had received a citation for failing to yield the right of way and that Mr. Noonan had been in a coma since the accident occurred. (*See* Doc. 24, Ex. E at 12.)

On November 2, 2005, Defendant increased its reserve to $100,000.00 "due to the severity of the [claimant's] injury." (*Id*. at 11.) Defendant also requested Allstate's full investigative file to date, including all injury-related information. (Doc. 24, Ex. F.)

On November 17, 2005, Allstate informed Defendant that it was offering its $100,000.00 limit to Plaintiffs. On the same day, Defendant also received the police report from the accident and noted that it was "not favorable" to Robbins. (Doc. 24, Ex. E at 10.)

On November 21, 2005, Allstate tendered its policy limit to Plaintiffs. (Doc. 24, Ex. G.) Thereafter, on November 23, 2005, Defendant received Allstate's investigative file, which did not contain any medical records or bills.

On December 1, 2005, Michelle L. Martin, Defendant's Senior Claim Adjuster, sent a letter to Mr. Noonan's counsel, David Gorewitz, P.A., which stated as follows:

> Dear Mr. Gorewitz:
>
> This letter is in follow up to my conversation with your paralegal today.
>
> I have been notified by Allstate that they have offered their $100,000.00 policy limits, and sent the check with a release. In reviewing the release, it is noted that our insured is listed on the release as well. Please contact me to discuss this.
>
> I have requested a certified copy of our insured's automobile insurance policy

> and will forward it to you upon receipt. Please be advised that our bodily injury limits are $100,000.00 per person, $300,000.00 per accident.
>
> Please forward any medical bills along with the hospital admission and discharge records, and any operative reports.
>
> I look forward to hearing from you.

(Doc. 24, Ex. I.) Further, on December 1, 2005, Allstate advised Defendant that Mr. Noonan was out of the coma and may be transferred to a long-term care facility.

On December 20, 2005, May 17, 2006, and July 28, 2006, Martin sent follow-up letters to Gorewitz, requesting that he provide Mr. Noonan's medical bills and records. (Doc. 24, Exs. J, L & M.) Defendant also requested that Allstate forward all medical bills and records on February 9, 2006, and again on June 15, 2006. (Doc. 24, Ex. E at 6, 8.)

On July 12, 2006, Defendant was notified by Allstate that Plaintiffs had filed suit against Robbins and that Mr. Noonan's hospital bills were over $250,000.00. (*Id*. at 5.) Allstate retained defense counsel who subpoenaed Mr. Noonan's medical records on July 31, 2006. Gorewitz filed objections to all of the subpoenas issued by defense counsel, contending they sought original records rather than copies. (*See* Doc. 24, Ex. O.) In response, defense counsel sent Gorewitz a letter requesting that he drop his objections or face a motion to compel. Thereafter, Gorewitz withdrew his objections.[1]

On August 30, 2006, Defendant finally received "several feet" of Mr. Noonan's medical records and bills. (Doc. 24, Ex. E at 4.) Two of the medical records suggested that Mr. Noonan

[1] The only ostensible purpose of this objection was to frustrate or delay the production of relevant information.

had a seizure and ran into the back of Robbins' car. (Doc. 24, Ex. R .) Further, Mr. Noonan's CT scan revealed an "old subdural hematoma" from a "prior trauma." (*Id*. at 5.)

On September 11, 2006, Defendant noted that it had authorized settlement at the full $100,000.00 policy limit, but that it would not issue the check until it received an executed release from Mr. Noonan. (Doc. 24, Ex. E at 4.) Thereafter, on or about September 15, 2006, Defendant tendered its policy limit of $100,000.00 to Plaintiffs. Plaintiffs rejected Defendant's tender as untimely on October 13, 2006. (*See* Doc. 24, Ex. T.)

Plaintiffs, Robbins, and Defendant subsequently entered into a Consent Judgment wherein a final judgment was entered against Robbins in the amount of $1,450,000.00. (Doc. 3 at ¶ 10.)[2] Pursuant to the terms of the Consent Judgment, Robbins assigned his bad faith claim against Defendant to Plaintiffs, who in turn filed this action against Defendant in state court. The crux of the bad faith claim is Plaintiffs' contention that Defendant failed to timely settle Plaintiffs' claim even though it knew "that this was a case of clear liability and that [Mr. Noonan's] damages greatly exceeded the policy limits." (*Id*. at ¶ 8.) Defendant removed the case to federal court based on diversity jurisdiction, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.)

Defendant seeks summary judgment on the theory that the undisputed facts demonstrate that it did not engage in bad faith. Specifically, Defendant argues that it was not obligated to tender its policy limits in the absence of a demand and any medical information. Defendant

---

[2] According to Plaintiffs, the "Final Judgment constitutes the damages entered against [Robbins], and pursuant to the Consent Judgment will be satisfied by Defendant . . . if the Plaintiffs . . . are successful in this insurance bad faith case." (Doc. 27 at 2.)

Based upon the parties' agreement, the Consent Judgment was not entered in the Court's record. (*Id*. at 10.)

further argues that any delay in its tender of the policy limit was due to Mr. Noonan's own failure to provide medical documentation despite Defendant's repeated requests that he do so.

**II. Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the

non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994).

**III. Analysis**[3]

**A. Choice of Law**

Defendant argues that Vermont law governs Plaintiffs' bad faith claim because (1) it was Allstate, not Defendant, that defended Robbins in Florida; (2) Defendant did not participate in any settlement negotiations in Florida; and (3) the handling of Mr. Noonan's claim by Defendant occurred in Vermont. (*See* Doc. 24 at 12.) Plaintiffs, on the other hand, contend that performance under the insurance contract was due in Florida and accordingly, Florida's substantive bad faith law applies to this action.

A federal district court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, in determining whether Florida or Vermont law applies, the Court must apply Florida's choice of law rules. Under Florida law, "matters concerning performance [of an insurance policy] are determined by the law of place of performance under traditional conflict of law principles." *Gov't Employees Ins. Co. v. Grounds*, 332 So. 2d 14-15 (Fla. 1976); *see also Adams v. Fidelity & Cas. Co.,* 920 F.2d

[3] In its responsive memorandum, Plaintiffs argue that the motion for summary judgment is premature because they have not received Defendant's entire claim file and, as a result, have not conducted depositions or any other meaningful discovery. (*See* Doc. 29 at 4-5.) The Court rejects this argument. Although Plaintiffs are correct in that summary judgment should not be granted until the non-moving party has had an adequate opportunity for discovery, they have made no meaningful showing that they have been denied that right. Specifically, Plaintiffs have failed to demonstrate how additional discovery, including the receipt of Defendant's claim file, would be relevant to the issues presented by the motion for summary judgment. Further, Plaintiffs have made no showing that they have been unable to obtain responses to their discovery requests. *See Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir. 1988).

897, 899 n.5 (11th Cir. 1991). Indeed, both parties agree that the choice of law that governs this case is the law of the place of performance. (*See* Doc. 24 at11); (Doc. 29 at 7).

The place of performance in this case is Florida because that is where Mr. Noonan was injured and subsequently filed suit. Moreover, Florida is the place where Defendant tendered its policy to Mr. Noonan by sending a check to his attorney's Florida office. Accordingly, the Court finds that the substantive law of Florida law controls the bad faith issue in this case.

**B. Whether Defendant Acted In Bad Faith**

As stated by the Eleventh Circuit in *Geico General Insurance Co. v. McDonald:*

> The focus of a bad faith case is on the actions of the insurer in fulfilling its obligations to the insured. The insurance company owes the insured a fiduciary duty to act in the insured's best interest. The legal standard governing an insurer's settlement conduct is one of reasonableness. Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations.

315 F. App'x 181, 184 (11th Cir. 2008) (applying Florida law) (internal quotations and citations omitted).[4]

While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, Florida courts have resolved bad faith claims on the pleadings where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith. *See Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. 5th DCA 1988).

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Here, the evidence fails to demonstrate any bad faith on the part of Defendant. Specifically, as the excess carrier, Defendant had no obligation to Robbins until November 20, 2005, when Allstate tendered its policy limit. Thereafter, Defendant had every right to investigate and adjust Mr. Noonan's claim. *See Johnson v. Geico General Ins. Co.*, 318 F. App'x. 847, 851 (11th Cir. 2009) ("An insurer-acting with diligence and due regard for its insured – is allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender policy limits in advance of a settlement offer) without time for investigation.").

The record shows that Defendant proceeded expeditiously to investigate Mr. Noonan's claim. Specifically, only one week after Allstate tendered its policy limit, Defendant requested medical documentation from Gorewitz . However, despite several follow-up requests, the records were not received until nine months later, on August 30, 2006. Then, only two weeks after receiving the medical records, Defendant tendered its policy limit.

Prior to September 2006, Defendant knew that Mr. Noonan had been seriously injured and that its insured (Robbins) was probably at fault. Defendant also knew that Plaintiffs' damages were likely in excess of $100,000.00 and that Allstate had tendered its $100,000.00 policy limit. What Defendant did not know until it received Plaintiffs' medical records, is whether Plaintiffs' damages could reasonably be expected to equal or exceed $200,000.00 and thus implicate Defendant's policy limit. Once that fact was established, Defendant promptly tendered its $100,000.00 policy limit.

The crux of a bad faith claim is the self-serving delay caused by the insurer's failure to adjust the claim in a timely manner, which exposes its insured to an excess judgment.[5] The linchpin of the insurer's liability is its *unreasonable* delay in tendering its policy limit. Here, the delay was caused not by Defendant's willful misconduct, but rather by Plaintiffs' attempt to "set-up" the Defendant by withholding pertinent information concerning Plaintiffs' claim.[6] In essence, Plaintiffs' counsel sought to convert Robbins' $100,000.00 insurance policy into a $1,450,000.00 windfall. Such is not the purpose of a bad faith claim.

Holding an insurance company liable under these circumstances would be contrary to the purposes of the bad faith cause of action and create an artificial incentive for third-party claimants to refuse to provide insurance companies with medical documentation necessary for proper investigation of claims. As the First Circuit stated in *Peckham v. Continental Casualty Insurance Co.*, 895 F.2d 830 (1st Cir. 1990):

> [T]he justification for bad faith jurisprudence is as a shield for insureds – not as a sword for claimants. Courts should not permit bad faith in the insurance milieu to become a game of cat-and-mouse between claimants and insurer, letting claimants induce damages that they then seek to recover, whilst relegating the insured to the sidelines as if only a mildly curious spectator.

*Id*. at 835.

[5] Here, the $1,450,000.00 "judgment" was the product of a *Cunningham* agreement between the parties. (Doc. 27 at ¶¶ 5-6.)

[6] Plaintiffs have failed to present any reason why their counsel ignored Defendant's numerous requests for medical documentation.

Because there is insufficient evidence from which a reasonable fact finder could conclude that Defendant acted in bad faith under the circumstances, Defendant is entitled to summary judgment on Plaintiffs' bad faith claim.

**IV. Motion to Strike**

Defendant moves to strike Plaintiffs' Notice of Serving Proposal of Settlement (Doc. 23) and the Proposal itself, which contains the full terms of the proposed settlement demand. However, even construing all the facts asserted and all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court finds that Defendant is due judgment as a matter of law on Plaintiffs' bad faith claim. As such, Defendant's Motion to Strike is thereby rendered moot.

**V. Conclusion**

Based on the foregoing, it is ORDERED as follows:

1. Defendant Vermont Mutual Insurance Company's Motion for Summary Judgment (Doc. 24), filed on August 3, 2010, is GRANTED.

2. Defendant Vermont Mutual Insurance Company's Motion to Strike Plaintiffs' Notice of Proposal for Settlement (Doc. 25), filed on August 4, 2010, is RENDERED MOOT.

3. The Clerk shall enter a final judgment providing that Plaintiffs, Russell and Denise Noonan, shall take nothing on their claims against the Defendant, Vermont Mutual Insurance Company. The judgment shall further provide that the Defendant shall recover its costs of action.

4. All other pending motions are terminated as moot.

5. The Clerk shall close this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on November 15, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party